IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01297-MSK-MEH

RORY K. WAGNER, and
JOANN M. WAGNER,

       Plaintiffs,

v.

UNIVERSAL FINANCIAL GROUP, INC., a Colorado corporation,
AURORA LOAN SERVICES LLC, a Colorado LLC,
NATIONSTAR MORTGAGE, LLC, a Texas LLC, and
MATT WATT, Director, Federal Housing Finance Agency, Conservator for the Federal Home Loan
Mortgage Corporation, a Federal Corporation and protected person,

       Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

       Before the Court are two motions: Defendant Nationstar Mortgage LLC's Motion for Summary Judgment [filed April 23, 2015; docket #81], and Defendant Aurora Loan Services LLC's Partial Motion for Summary Judgment [filed April 23, 2015; docket #82]. Both have been referred to this Court for recommendation. (Dockets ## 83, 84.)

       Defendants assert that there is no genuine issue of material fact, and thus they are entitled to judgment as a matter of law under Fed. R. Civ. P. 56(c) in large part based on affirmative defenses, including statue of limitations and *res judicata*. (*See* docket ## 81, 82.) Defendants Nationstar and Aurora initially filed both motions as motions to dismiss; Plaintiffs timely filed responses [*see* dockets ##85, 86] and Defendants their replies [*see* dockets ##87, 88]. The Court then converted both to motions for summary judgment to consider exhibits Defendants provided

outside the pleadings pursuant to Fed. R. Civ. P. 12(d).  (Docket #93.)  Plaintiffs and Defendants

Nationstar and Aurora then filed a joint supplement briefing on the Motions for Summary Judgment.

(Docket # 97.)  Plaintiffs filed late an Affidavit of Rory K. Wagner, which the Court has considered

despite its being filed on August 6, 2015 – two weeks after the July 23, 2015 deadline for

supplemental filings.  (Docket #98.)  The parties have not requested oral argument, and the Court

finds it would not materially assist in the determination of this matter.  For the reasons that follow,

the Court recommends the District Court **grant** Defendants' Motions for Summary Judgment.[1]

## BACKGROUND

### I.    History

This action, which was removed from state court on May 8, 2014, arises from an alleged

identity theft and fraudulent loan scheme perpetrated against Plaintiffs in 2006 and 2007.  (Dockets

##1, 3.)  In 2008, Plaintiffs filed a separate action against Universal Financial Group, Inc.,

("Universal"), and in 2009 that action was removed to the United States District Court for the

District of Colorado.  In that case, the Honorable Philip A. Brimmer granted summary judgment for

Universal.  *Wagner v. Universal Fin. Grp., Inc.*, 09-cv-00038-PAB-BNB, 2010 WL 866079 (D.

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b).  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

Colo. March 5, 2010).  Because the 2009 case was based on many of the same factual allegations

contained in the First Amended Complaint in this case [*see* docket #69], the Court incorporates

Judge Brimmer's recitations of undisputed background facts in his Summary Judgment Order:

> This unfortunate story begins with the Wagners investing a substantial sum of money in a real estate venture run by Calvin Pryor. Mr. Wagner met Mr. Pryor at an investment seminar in Westminster, Colorado.  In early 2006, after several additional meetings between the two, Mr. Wagner paid Mr. Pryor $150,000 for a stake in an apartment complex operation from which Mr. Wagner was told he would receive income of $55,000 to $59,000 per month for at least a year.  These payments never materialized.
>
> In January 2007, Mr. Pryor's attorney, Todd Doss, contacted the Wagners about a purported satisfaction of the debts Mr. Pryor owed them.  Mr. Doss represented that a trust belonging to Mr. Pryor would finance this payoff.  Because of "wording within Mr. Pryor's trust," the Wagners would be required to refinance their home and a related home equity line of credit into one debt that would then be paid from the trust's funds.  The Wagners were told to work with Eureka McKinney at Universal Financial Group, Inc. ("Universal") on the refinancing process.
>
> Ms. McKinney was an entry level employee of Universal, hired in August 2006.  Ms. McKinney was also working with, and eventually married, Mr. Pryor.  Neither Universal nor the Wagners knew of this relationship at the time of the refinancing.  During Ms. McKinney's initial conversation with the Wagners, she allegedly confirmed what Mr. Doss had represented, that the Pryor trust would pay off the refinance loan as soon as it was closed.  The Wagners claim that Ms. McKinney also told them that, after closing, they were to wire $15,000 from the loan proceeds directly to her as payment for the trustee's services.  The Wagners acknowledge that neither of these terms—the payoff from the trust or the $15,000 fee—were put into writing.
>
> The refinance loan closed as scheduled in late January 2007. The Wagners do not dispute that the loan documents accurately conveyed the basic terms of the loan, e.g., interest rate, finance charge, and payment totals.  The loan, made for $291,000, paid the outstanding debts on the property, the closing costs, and the $15,000 "trustee fee." However, despite the Wagners' repeated communications with

> an employee at the company ostensibly scheduled to make the payoff from the Pryor trust, an employee who the Wagners now believe was actually Ms. McKinney posing as "Angee Price," the payoff never occurred. The Wagners continue to pay on the Universal loan, the terms of which—in particular the 7.875% adjustable interest rate—are less favorable than the terms of the loans that were refinanced.

*Wagner*, 2010 WL 866079, at *1-2.

The First Amended Complaint in the current case contains the following additional allegations. On January 28, 2007, two days after the Universal loan closed, Plaintiffs faxed a "Notice of Right to Cancel" to Universal. (Docket #69, ¶ 9.) On February 14, 2007, the Universal loan was assigned to Aurora, and Universal informed Plaintiffs that the "Notice of Right to Cancel" was being processed. (*Id.* at ¶¶ 11, 13.) In May 2008, Aurora informed Plaintiffs not to pay the mortgage. (*Id.* at ¶ 21.) On May 14, 2008, Plaintiffs were informed by the Florida Department of Law Enforcement that Mr. Pryor was incarcerated and being prosecuted for multiple frauds against Plaintiffs. (*Id.* at ¶ 22.) Aurora sent a right to cure letter to Plaintiffs on July 14, 2008. (*Id.* at ¶ 23.) To avoid foreclosure, Plaintiffs entered into a loan modification agreement with Aurora on August 29, 2008. (*Id.* at ¶ 25.)

In September 2011, the following documents were disclosed to Plaintiffs: a March 24, 2007 fax cover sheet indicating Aurora received the Notice of Right to Cancel; a September 28, 2007 letter from Aurora to Universal indicating loan irregularities, and a November 30, 2007 letter from Aurora to the Illinois Attorney General's Office indicating that Plaintiffs were involved in a scam. (*Id.* at ¶ 27.) On September 20, 2013, Defendant Nationstar sent Plaintiffs a letter indicating that it had updated their files with the "Notice of Right to Cancel." (*Id.* at ¶ 28.)

## II.     Procedural History

Defendants Aurora, MERSCORP Holdings, and Nationstar filed a motion to dismiss the original complaint on May 29, 2014. (Docket #13.) Plaintiffs then filed a motion to amend the complaint. (Docket #33.) This Court recommended the motion to dismiss be granted and the motion to amend be denied, to which Plaintiffs objected. (Dockets ##50, 51.) Chief Judge Marcia S. Krieger declined to adopt the recommendation, granting the motion to file an amended complaint and denying the motion to dismiss, noting that the affirmative defense of *res judicata* would be better decided under a motion for summary judgment. (Docket #68.) In her Order, Judge Krieger wrote: "The parties should not misread this Order to suggest that all or any claims will withstand a motion for summary judgment challenge asserting the doctrine of *res judicata*. That may not be the case. This Order simply reserves the determination of such affirmative defense to a later time, when the parties can fully address the factual and legal issues." (*Id*. at 8.)

Plaintiffs filed their First Amended Complaint on March 23, 2015. (Docket #68.) The First Amended Complaint dismissed HUD and added the Federal Housing Finance Agency as a party; added a civil conspiracy claim; and added a Fair Credit Reporting claim. (Docket #69.) In the First Amended Complaint, Plaintiffs thus assert the following claims against Universal, Aurora, Nationstar, and Matt Watt of the Federal Housing Finance Agency: (1) rescission; (2) quiet title; (3) fraud or misrepresentation; (4) civil conspiracy; and (5) violation of the Fair Credit Reporting Act. (*Id*.)

Defendant Nationstar then filed a motion to dismiss [docket #81] while Defendant Aurora filed a partial motion to dismiss [docket #82]. Plaintiffs timely replied and Defendants timely responded. (Dockets ##85-88.) This Court then converted the pending motions to Motions for

Summary Judgment.  (Docket #93.)  Defendants Aurora and Nationstar requested supplemental briefing, which Judge Krieger granted, to be filed on or before July 23, 2015.  (Dockets ##95, 96.) Defendants[2] filed a joint Supplement on July 23, 2015.  (Docket #97.)  On August 6, 2015, Plaintiffs filed an Affidavit of Rory K. Wagner, which the Court has considered despite its untimely filing two weeks past Judge Krieger's deadline.  (Docket #98.)  Defendants contend that the Court should grant summary judgment because the claims are barred by claim preclusion, time-barred, and/or fail to state claims for relief.  (Dockets ##81, 83, 97.)

## III.    Findings of Fact

For purposes of evaluating the pending Motions for Summary Judgment, the Court makes the following findings of fact viewed in the light most favorable to the Plaintiffs, who are the nonmoving parties in this matter.

1.      Mr. Wagner obtained a loan in the original amount of $291,000 from Universal on January 26, 2007.  (First Amended Complaint, docket #69, ¶7; Affidavit of A.J. Loll ("Loll Affidavit"), docket #97-1, ¶6.)

2.      The loan is secured by a deed of trust against the property located at 5115 Neeper Valley Road, Manitou Springs, Colorado.  (Loll Affidavit at ¶9.)

---

[2] For purposes of this Recommendation, "Defendants" refers to Aurora and Nationstar.

3.      Mr. Wagner rescinded the loan by executing a notice of right to cancel on January 28, 2007.[3]

(First Amended Complaint at ¶9.)

4.      Universal refused to act on Mr. Wagner's rescission.  (*Id.* at ¶31.)

5.      Plaintiffs filed a prior action against Universal entitled *Rory Wagner and Joanne Wagner v. Universal Financial Group, Inc.*, 09-cv-00038-PAM-BNB, (the "prior action").  (Defendant Nationstar's Request for Judicial Notice, docket #81-1, exhibit 3 (showing complaint and jury demand in the prior action).)

6.      In that prior action, Plaintiffs did not claim Mr. Wagner rescinded the loan.[4]  (*Id.*)

7.      Plaintiffs' claims in the prior action were dismissed with prejudice on April 28, 2010.  (*Id.*, exhibit 6 (showing Stipulation of Dismissal with Prejudice of the prior action).)

8.      Nationstar has been the servicer of Mr. Wagner's loan since June 16, 2012.  (*Id.*  ¶8; Defendants' Supplemental Briefing, docket #97, exhibit C.)

---

[3]Plaintiffs did not respond directly to Defendants' Statement of Undisputed Facts.  Instead, Plaintiffs untimely filed the Wagner Affidavit (*see* docket #98).  There, Plaintiffs assert as follows: "At the Universal deposition the blank 'Notice of Right to Cancel' form was placed in front of me as exhibit 21 [with the following exchange:] 'Q: Did you exercise that right to cancel? A: I did not exercise that right to cancel.'  I understood the question to be whether the 'Right to Cancel,' that is, the deposition exhibit 21, was exercised at that time, so my response was no.  In exhibit 21, under 'I Wish to Cancel' does not appear my signature [*sic*].  I wrote [] in the margins of my d[e]position, 'Not at closing,' but I don't know when I made those entries."

For purposes of their Motions for Summary Judgment, Defendants adopt Plaintiffs' version of these events and concede in their list of undisputed facts that Plaintiffs timely exercised a notice of right to cancel.  Thus, the Court here adopts those facts as undisputed despite the deposition testimony of Mr. Wagner in the prior action heard by Judge Brimmer, in which Mr. Wagner said he did not exercise a right to cancel.

[4]Plaintiffs admit they did not claim a rescission in the earlier lawsuit but explain that decision as follows: "[Plaintiff Rory Wagner] was told by Aurora [] representatives that it had nothing to do with them or their loan.  We were going after Universal for fraud.  I didn't know that exercising my right to rescind against Universal could rescind the Aurora loan."  Wagner Affidavit, docket #98 at 1-2.

9.      Aurora is a prior servicer of Mr. Wagner's loan.  (First Amended Complaint, docket #69 at ¶8.)

10.     Nationstar received notice from credit reporting agencies that Mr. Wagner disputed Nationstar's credit reporting related to the loan on the following dates: October 30, 2014; November 5, 2014; November 19, 2014; November 26, 2014; and March 27, 2015.  (Loll Affidavit, ¶¶9-13.)

11.     In response to the credit reporting agencies' notice of dispute, Nationstar investigated Mr. Wagner's loan account and responded with its modified credit reporting.  (*Id.*)

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility to provide the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The nonmoving party has the burden of showing there are issues of material fact to be determined.  *Celotex*, 477 U.S. at 322.  That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).  "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge."  *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).  "The court views the record and draws all inferences in the light most favorable to the nonmoving party."  *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

### A.   Claim Preclusion

Defendants contend the First Amended Complaint is barred in its entirety by the doctrine of claim preclusion.  The doctrine of claim preclusion will "prevent a party from re-litigating a legal claim that was or could have been the subject of a previously issued final judgment." *MACTEC, Inc.*

*v. Gorelick,* 427 F.3d 821, 831 (10th Cir. 2005). Three elements are required to apply the doctrine of claim preclusion: (1) a final judgment on the merits in an earlier action; (2) identity or privity of the parties in the two suits; and (3) identity of the cause of action in both suits. *Id.* (citing *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Stds.*, 314 F.3d 501, 504 (10th Cir. 2003)). "If these requirements are met, [claim preclusion] is appropriate unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit." *Id.* (citing *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 n. 4 (10th Cir. 1999)).

With respect to the first element, Judge Brimmer issued a final judgment on the merits on March 8, 2014, by granting summary judgment in favor of Universal and dismissing with prejudice each of Plaintiffs' claims. *See Wagner*, 2010 WL 866079, *7. In that case, Plaintiffs asserted the following seven claims for relief: (1) violation of the Colorado Consumer Protection Act (CCCC); (2) violation of Colorado's statute banning unconscionable mortgage practices; (3) fraud; (4) misrepresentation; (5) negligent hiring; (6) negligent training and supervision; and (7) basic negligence. Judge Brimmer concluded that Plaintiffs' claims were based on oral statements a dishonest agent of Universal allegedly made when negotiating an extension of credit, and the claims could not proceed in light of Colorado's credit agreement statute of frauds. *Id.* With regard to the negligence claim, Judge Brimmer held Universal satisfied its duty by accurately disclosing the terms of the refinance loan it was offering. *Id.* Plaintiffs did not appeal that decision. Thus, the first element of claim preclusion is met.

With respect to the second element, the Court must determine whether Aurora and/or Nationstar were in privity with Universal, the sole Defendant in the original action. "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the

parties in the two actions are really and substantially in interest the same." *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989).     Privity "is a label that seeks to convey the existence of a relationship sufficient to give courts confidence that the party in the former litigation was an effective representative of the current party's interests." *Entek GRB, LLC, v. Stull Ranches, LLC*, 763 F.3d 1252, 1258 (10th Cir. 2014).   Considered with the factual allegations contained in the First Amended Complaint, Defendants attached exhibits supporting a finding that Universal is the original lender and Aurora and Nationstar are its successors and assigns.   (*See* docket # 81-1, exhibit 6; docket #69, ¶8.)   As subsequent assignees of the debt, Aurora and Nationstar stand in the shoes of the original lender with regard to the property, and are therefore in privity with Universal.   *See* Restatement (Second) of Judgments § 43 (1982 ) ("A judgment in an action that determines interest in real or personal property . . . with respect to the property involved in the action . . . has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself.")

With regard to the third element, the claims need not be identical in both lawsuits; rather, to determine if there is identity of cause of action, the Tenth Circuit has adopted a "transactional approach." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 832 (10th Cir. 2005).   "Under this approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction." *Id.*   Here, the same loan transaction regarding the same property forms the basis of Plaintiffs' claims in both actions.   Thus, the Court finds the third element of claim preclusion is satisfied.

Presuming that Plaintiffs rescinded the loan, the Court notes Plaintiffs also were aware by the time they filed suit in 2009 that both Universal and Aurora refused to recognize the rescission

notice. Yet they failed to assert in that case that Mr. Wagner rescinded the loan. *See* docket #81-1, exhibit 3 (the complaint in the prior action). As Plaintiffs' rescission, quiet title, "fraud or misrepresentation" and civil conspiracy claims are all based in the allegations that Mr. Wagner rescinded the loan in 2007, all such claims should have been raised in the prior action and were not; thus, Plaintiffs may not properly assert those claims here.

Accordingly, the Court recommends granting Defendants' Motions for Summary Judgment based on the doctrine of claim preclusion.

**B.**    **Rescission**

Recognizing that the District Court may disagree and find Plaintiffs' claims are not barred by the doctrine of claim preclusion, the Court will address Defendants' other arguments for summary judgment.

Plaintiffs' first claim seeks relief pursuant to the Truth in Lending Act (TILA) and the CCCC on grounds that Defendants failed to act upon Plaintiffs' "Notice of Right to Cancel." One of the "remedial" rights that TILA accords to consumers is the right to obtain rescission of a loan in equity. *See* 15 U.S.C. § 1635(a). Specifically, TILA authorizes a borrower whose loan is secured with his "principal dwelling" to rescind the loan transaction entirely "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required . . . together with a statement containing [certain] material disclosures . . ., whichever is later." *Id*. If the required TILA disclosures are never made, then the borrower's right of rescission under § 1635(f) "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." *Id*. § 1635(f). Section 1635(f) is not a

statute of limitations, but rather one of repose.  *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1180 (10th Cir. 2012).

Defendants concede that *Jesinoski v. Countrywide Home Loans, Inc*., 135 S.Ct. 790 (2015) has changed the landscape for these claims, which now requires a borrower only to provide notice of the election to rescind – not commence suit – within a three-year period.  (Docket #97 at 6.) Defendants acknowledge that a borrower has, under 15 U.S.C. § 1635(a), a three-business-day right to rescind without penalty.  If exercised properly by the borrower, the creditor must return any money or property received from the borrower.  15 U.S.C. § 1635(b).  Additionally, the creditor is required to take "any action necessary or appropriate" to reflect the termination of any security interest that had been created with the loan.  *Id*.  If the creditor fails to respond within 20 days of receiving the borrower's notice of rescission, a potential TILA violation exists and begins TILA's one-year statute of limitations.  *Taylor v. Wells Fargo Bank, N.A.*, __ F.3d __, No. 14-617 (CKK), 2015 WL 1325761, at *10 n.5 (D.D.C. Mar. 25, 2015).  In *Taylor*, the post-*Jesinoski* court noted:

> Even assuming [p]laintiff exercised his right to rescission within the statutory three-year period, [p]laintiff would have had to file his TILA rescission claim in district court by January 7, 2011, at the latest in order for his claim not to be time-barred under the statute of limitations set forth in 15 U.S.C. § 1640(e).  As this [c]ourt [previously] explained: '[i]f the borrower exercises her right of rescission during this [3-year] extended period, the creditor's denial of rescission or its failure to properly respond to the rescission within 20 days after receipt of notice gives rise to a potential violation under TILA and commences the running of TILA's one-year statute of limitations.  451 F. Supp. 2d at 40 (citing 15 U.S.C. § 1635(b) (requiring creditor "[w]ithin 20 days after receipt of a notice of rescission to return [to] the obligor any money or property given as earnest money, downpayment or otherwise, and [to] take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.").

*Id*.  In *Jesinoski*, the Court held that borrowers have three years to rescind, but the Court did not indicate any change in the requirement that suit had to be filed within the one-year TILA statute of

13

limitations. *Jesinoski*, 135 S.Ct. at 791.  There, the borrowers were not provided the disclosures about their rescission rights, so had three years to do so.  *See id*.  When the servicer did not act on the borrowers' rescission notice, the borrowers sued one year later to enforce their rights.  *See id*. at 792.

Here, in contrast, the loan transaction was completed on January 26, 2007.  Even if Plaintiffs properly rescinded the loan two days later and Universal acknowledged the notice on February 14, 2007, advising Plaintiffs the rescission was "being processed," the failure of Universal to take action on the rescission notice in 2007 began the one-year statute of limitations under TILA.  *See Taylor*, __ F.3d __, 2015 WL 1325761, at *10 n.5.  The Court need not determine whether "the occurrence of the violation" was January 26, 2007 (the date the Universal loan closed), January 28, 2007 (the date Plaintiffs faxed the notice of right to cancel), or August 29, 2008 (the date Plaintiffs entered into a loan modification agreement) because all of these occurrences put the May 8, 2014 filing of the original Complaint well outside the period permitted by the one-year statute of limitations.

Plaintiffs also claim they are entitled to rescind the loan pursuant to CCCC, which authorizes rescission "as provided in [TILA] and regulations thereunder." Colo. Rev. Stat. § 5-5-203.  Because CCCC requires compliance with TILA, Plaintiffs' claims under CCCC are also time-barred.

Accordingly, should the District Court find Plaintiffs' claims are not barred by claim preclusion, the Court recommends granting summary judgment for Defendants  because Plaintiffs' rescission claim is time-barred; as such, Plaintiffs' claims for quiet title, "fraud and misrepresentation," and civil conspiracy – all of which are based in the rescission claim – similarly fail as described in turn below.

C.    **Quiet Title**

Quiet title actions are governed by Colorado Rule of Civil Procedure 105, which authorizes

"[a]n action ... brought for the purpose of obtaining a complete adjudication of the rights of all

parties thereto, with respect to any real property and for damages, if any, for the withholding of

possession." *Hinojos v. Lohmann*, 182 P.3d 692, 696–97 (Colo. App. 2008) (citing Colo. R. Civ.

P. 105(a)).  The plaintiff "bears the burden of establishing title in the property superior to that of the

defendant." *Hutson v. Agric. Ditch & Reservoir Co.*, 723 P.2d 736, 738 (Colo.1986).

Plaintiffs' quiet title claim requests "a Declaratory Judgement holding that the Universal loan

was satisfied, that the 'loan modification' was rescinded or voidable and that Defendants have no

legal interest to the real property herein." (Docket #69, ¶ 34.)  Plaintiffs' allegations establish that

Defendants did not act upon the "Notice of Right to Cancel" and the loan was not rescinded.  As

determined above, Plaintiffs' right to bring suit on that failure has expired.  Plaintiffs' allegations

provide no other basis to quiet title to the property in their favor.  Because Plaintiffs have not met

their burden of establishing superior title in the property, the Court recommends granting summary

judgment for Defendants regarding Plaintiffs' second claim for relief.

D.    **Fraud**

Defendants contend that summary judgment is warranted for Plaintiffs' claim of "fraud or

misrepresentation" as to each Defendant because: (1) there are no allegations to sustain a fraud claim

against Nationstar, and  (2) the claim against Aurora is barred by the statute of limitations.

Pursuant to Federal Rule of Civil Procedure 9(b), a more stringent pleading standard is

mandated for certain claims, such as fraud or misrepresentation.  "For any claim alleging fraud, the

circumstances constituting fraud or mistake must be stated with particularity." *In re Accelr8 Tech.*

*Corp. Secs. Litig.*, 147 F. Supp. 2d 1049, 1054 (D. Colo. 2001) (citing Fed. R. Civ. P. 9(b)). Thus, with regard to their third claim for relief, Plaintiffs must plead "the who, what, when, where, and how of the alleged fraud" or in other words, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006). In the District of Colorado, this is required regardless of whether the alleged fraud is an active representation or a passive omission. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010).

> The five elements that must be established for a claim of fraud in Colorado are:
>
> (1) concealment of a material existing fact, that in equity and good conscience should be disclosed; (2) knowledge on the part of the one making the representation that it is false; or utter indifference to its truth or falsity; or knowledge that he is concealing a material fact that in equity and good conscience he should disclose; (3) ignorance on the part of the one to whom representations are made or from whom such fact is concealed, of the falsity of the representation or of the existence of the fact concealed; (4) the representation or concealment made or practiced with the intention that it shall be acted upon; and (5) action on the representation or concealment resulting in damage.

*Universal Drilling Co. v. Camay Drilling Co.*, 737 F.2d 869, 872 (10th Cir. 1984) (citing *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458, 462 (1937)); *see also Ackmann v. Merch. Mortg. & Trust Corp.*, 645 P.2d 7, 13 (Colo. 1982). Furthermore, fraud claims are subject to a three-year statute of limitations. Colo. Rev. Stat. § 101(c).

     i.    <u>Nationstar</u>

Plaintiffs' First Amended Complaint includes the following with regard to the fraud claim against Nationstar: "[t]hat Nationstar, Freddie Mac or their assignees did not have the rights afforded a holder in due course since the Aurora instrument was taken by purchase in bankruptcy." (Docket

#69, ¶ 39.)   Plaintiffs have not alleged that they filed for bankruptcy, and the factual allegations

mention Nationstar only once, stating that Nationstar wrote Plaintiffs a letter on September 20, 2013,

informing Plaintiffs the company had updated its files with the "Notice of Right to Cancel."   (*Id.*

at ¶ 28.)  Plaintiff also does not assert any allegations that Nationstar made any false representations

within the past three years as required to support a fraud claim. The Court thus cannot determine any

basis for a fraud claim against Nationstar and recommends summary judgment be granted for

Nationstar regarding Plaintiffs' third claim for "fraud or misrepresentation."

      ii.    <u>Aurora</u>

 Plaintiffs claim that the original loan through Universal was procured through fraud, and

that Aurora perpetuated the fraud by threatening  foreclosure unless Plaintiffs entered a loan

modification agreement.  According to Plaintiffs' allegations, Universal committed fraud on or

before January 26, 2007, when the refinance loan closed, and Aurora committed fraud on or before

August 29, 2008, when it entered into a loan modification agreement with Plaintiffs.  Both of these

dates place the May 8, 2014 filing of the claim well outside the three-year statute of limitations.

Accordingly, the Court recommends summary judgment for Aurora regarding Plaintiffs' third claim

for "fraud or misrepresentation" as the claim is time-barred.

**E.**    <u>**Civil Conspiracy**</u>

      Plaintiffs' First Amended Complaint asserts a civil conspiracy claim against Defendant

Aurora only. (Docket #69 at 6.)  Plaintiffs state that "it can be implied that Aurora conspired [] in

perpetuating the loan that was rescinded and paid." (*Id.*)  Defendant Aurora argues the claim is

time-barred and that Plaintiffs fail to plead the requisite meeting of the minds.  (Docket #82 at 1-2.)

To prove a claim for civil conspiracy, a plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result. *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). Plaintiff must present evidence of an agreement; the court may not infer its existence. *Id.* "Additionally, the purpose of the conspiracy must involve an unlawful act or unlawful means. A party may not be held liable for doing in a proper manner that which it had a lawful right to do." *Id.*; *see also Magin v. DVCO Fuel Sys., Inc.*, 981 P.2d 673, 675 (Colo. App. 1999) ("liability may be established for civil conspiracy even where only lawful acts were performed if the purpose or goal is unlawful"). Civil conspiracy is a derivative cause of action that is not actionable per se. *Double Oak Constr., L.L.C., v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003). "The essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from the acts done in furtherance of the conspiracy." *Id.* (quoting *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1055 (Colo. 1995)). Thus, if "the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Id.* Civil conspiracy claims share a statute of limitations with the underlying tort. *See Sterenbuch v. Goss*, 266 P.3d 428, 436 (Colo. App. 2011).

Here, Plaintiffs do not indicate what tort underlies their civil conspiracy claim. Regardless, this Court has already determined that Plaintiffs' rescission and fraud claims are barred by the applicable statutes of limitations, thus Plaintiffs' civil conspiracy claim is also barred by the statute of limitations. Additionally, the elements of a civil conspiracy claim require that the underlying acts be unlawful and create an independent cause of action. *See id.* Plaintiffs have failed to sufficiently allege an independent cause of action. The Court notes that Plaintiffs' Response to

Aurora's Motion (*see* docket #88) repeats the information in the First Amended Complaint and requests "leave to remedy" should the Court find the pleading requires more. Plaintiffs then did not provide any further information when given the opportunity to do so in supplemental briefing when the Court converted the motions to dismiss into Motions for Summary Judgment. Furthermore, the record is void of any evidence of civil conspiracy, and the underlying potential claims are time-barred.

Consequently, Plaintiffs fail to state a claim for civil conspiracy and this Court respectfully recommends that the District Court grant Defendant Aurora's Partial Motion for Summary Judgment regarding Plaintiffs' fourth claim without further leave to amend.

## F.   Fair Credit Reporting Act

Plaintiffs' final cause of action seeks damages for violations of the Fair Credit Reporting Act ("FRCA") against Defendant Nationstar only. (First Amended Complaint, docket #69 at 46.) Plaintiffs do not indicate under which section of the FCRA their claim arises. Based on the allegation that Nationstar violated the FCRA "by supplying inaccurate information to credit reporting agencies," the Court assumes Plaintiffs raise a claim under 15 U.S.C. § 1681s–2(b), which provides:

> After receiving notice pursuant to section 1681s-2(b) of this title of a dispute with regard to completeness or accuracy of any information provided by a person or consumer reporting agency, the person shall –
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency[.]

"Although there is a private right of action to enforce this provision against furnishers, the duty to investigate a dispute only arises after a credit reporting agency notifies the furnisher of the dispute." *Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1214 (D. Colo. 2014); *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012) ("When the furnisher receives notice of a dispute from the credit reporting agency, it must perform the verification and correction duties described in 15 U.S.C. § 1681s–2(b).")

Plaintiffs assert that Nationstar violated the FCRA by "supplying inaccurate information to credit reporting agencies." First Amended Complaint, docket #69 at 7. Defendants' undisputed findings of facts – not countered by Plaintiffs – indicate Nationstar received notice from credit reporting agencies that Mr. Wagner disputed Nationstar's credit reporting related to the loan on the following dates: October 30, 2014; November 5, 2014; November 19, 2014; November 26, 2014; and March 27, 2015. (Loll Affidavit, ¶¶9-13 and exhibits D-F.) In response to the credit reporting agencies' notice of dispute, Nationstar investigated Mr. Wagner's loan account and responded with its modified credit reporting. (*Id.*) While Mr. Wagner requested that Nationstar report the loan "paid in full" (*see* Loll Affidavit, ¶14), Nationstar asserts it could not do so as the loan has an unpaid principal balance of $273,322.04. (*See id*. and exhibit I.) There are no allegations in the First Amended Complaint – or anywhere in the materials before the Court – in support of Plaintiffs' claims that Nationstar breached any of its obligations under the FCRA.

Therefore, the Court recommends summary be judgment be granted for Nationstar regarding Plaintiffs' fifth claim regarding FCRA.

## **CONCLUSION**

Accordingly, for the reasons stated above, the Court respectfully recommends that Defendant Nationstar Mortgage LLC's Motion for Summary Judgment [filed April 23, 2015] and Defendant Aurora Loan Services LLC's Partial Motion for Summary Judgment [filed April 23, 2015; docket #82] be **granted**.

Dated at Denver, Colorado, this 21st day of August, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge